UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JAMEL BROWN,

                    Petitioner,

vs.                                    Case No. 3:09-cv-88-J-34TEM

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____

**ORDER**

**I. Status**

        Petitioner Jamel Brown initiated this action by filing a <u>pro</u>
<u>se</u> Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28
U.S.C. § 2254 on January 28, 2009, pursuant to the mailbox rule.
Thereafter, Petitioner filed an Amended Petition (Doc. #13), in
which he challenges a 2005 state court (Duval County, Florida)
judgment of conviction for sale or delivery of cocaine on four
grounds.  Respondents have submitted a memorandum in opposition to
the Petition.  <u>See</u> Respondents' Answer to Petition for Writ of
Habeas Corpus (Response) (Doc. #25); Exhibits (Resp. Ex.) (Doc.
#18).  On April 1, 2009, the Court entered an Order to Show Cause
and Notice to Petitioner (Doc. #5), admonishing Petitioner
regarding his obligations and giving Petitioner a time frame in
which to submit a reply.  Petitioner submitted a brief in reply on

February 4, 2011.  <u>See</u> Petitioner's Reply to Respondents' Answer to Petitioner's Petition for Writ of Habeas Corpus (Reply)(Doc. #30). This case is ripe for review.

## II. Procedural History

On August 20, 2004, Brown was charged with two counts of sale or delivery of cocaine and one count of possession of cannabis. Resp. Ex. A, Information.  Brown entered a plea of guilty on March 10, 2005.  Resp. Exs. C, Transcript of the Plea Proceeding (Plea Tr.); D, Plea of Guilty.  On June 9, 2005, the trial court adjudicated Petitioner guilty of sale or delivery of cocaine (counts one and two) and possession of cannabis (count three) and sentenced him, as a habitual felony offender, to twenty-five years of imprisonment on count one, twenty-five years of imprisonment on count two (to run concurrently to count one) and one year of incarceration on count three.  Resp. Exs. F, Transcript of the Sentencing Proceeding (Sentencing Tr.) at 274-75; G, Judgment.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that the trial judge erroneously stated that it must impose a habitual offender sentence if Brown met the criteria of a habitual offender, but the judge actually had the discretion to sentence him as a non-habitual offender.  Resp. Ex. J.  The State filed an Answer Brief, <u>see</u> Resp. Ex. K, and Brown filed a Reply

Brief, <u>see</u> Resp. Ex. L.[1]  On April 21, 2006, the appellate court affirmed Brown's conviction and sentence per curiam.  <u>Brown v. State</u>, 926 So.2d 1272 (Fla. 1st DCA 2006); Resp. Ex. M.  The mandate issued on May 9, 2006.  Resp. Ex. N.  Brown did not seek review in the United States Supreme Court.

Brown, through counsel, also filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) on June 13, 2007.  Resp. Ex. O.  In his request for post conviction relief, Brown asserted that his counsel (Richard A. Selinger) was ineffective because he: coerced him to enter a guilty plea (ground one); misadvised him on the actual sentence he could receive pursuant to the plea (ground two); misled him about the maximum penalty he could face (ground three); failed to prepare for trial, thus inducing him to enter a guilty plea (ground four); and  failed to move to disqualify the judge for making biased comments during sentencing (ground five).  <u>Id</u>.  The State filed a response, <u>see</u> Resp. Ex. P, and the trial court denied the Rule 3.850 motion on July 27, 2007, for the reasons set forth in the State's response, <u>see</u> Resp. Ex. Q.  On August 23, 2007, the

_____

[1] While the direct appeal was pending, Brown, through counsel, filed a motion to correct illegal sentence.  Resp. Ex. H.  In that motion, Brown asserted that the sentence was illegal because the trial judge erroneously believed and stated that he must impose a habitual felony offender sentence when he actually had the discretion to impose a non-habitual offender sentence even if Brown qualified as a habitual offender.  The trial court denied the motion.  Resp. Ex. I.

trial court denied Brown's motion for rehearing. Resp. Exs. R; S. The appellate court affirmed the denials per curiam on March 10, 2008, see Brown v. State, 979 So.2d 222 (Fla. 1st DCA 2008); Resp. Ex. U, and denied Brown's motion for rehearing on April 11, 2008, see Resp. Exs. V; W. The mandate issued on April 29, 2008. Resp. Ex. X.

On May 20, 2008, Brown filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), in which he argued that the trial court's imposition of the twenty-five-year sentence for a third felony conviction was discretionary, not mandatory, thus rendering the sentence illegal. Resp. Ex. Y. The trial court denied the motion, and Brown filed a petition for writ of certiorari in the appellate court. Resp. Ex. AA. On December 12, 2008, the appellate court affirmed the denial per curiam. Brown v. State, 996 So.2d 216 (Fla. 1st DCA 2008); Resp. Ex. BB. The mandate issued on January 7, 2009. Resp. Ex. CC.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Order (Doc. #21), filed May 21, 2010; Response at 15.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[2] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir.), cert. denied, 131 S.Ct. 647 (2010).

---

[2] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective

7

assistance must apply a "strong presumption"
that counsel's representation was within the
"wide range" of reasonable professional
assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The
challenger's burden is to show "that counsel
made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment." <u>Id</u>., at
687, 104 S.Ct. 2052.

With respect to prejudice, a challenger
must demonstrate "a reasonable probability
that, but for counsel's unprofessional errors,
the result of the proceeding would have been
different.[3] A reasonable probability is a
probability sufficient to undermine confidence
in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052.
It is not enough "to show that the errors had
some conceivable effect on the outcome of the
proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
Counsel's errors must be "so serious as to
deprive the defendant of a fair trial, a trial
whose result is reliable." <u>Id</u>., at 687, 104
S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

The two-part <u>Strickland</u> test applies to ineffective assistance
claims concerning both the decision to accept a guilty plea offer
and the decision to forgo a plea offer and stand trial. <u>Hill v.
Lockhart</u>, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-
part <u>Strickland</u> test must be satisfied to show a Sixth Amendment
violation, "a court need not address the performance prong if the
petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>,

---

[3] In the context of an ineffective assistance challenge to the
voluntariness of a guilty or no contest plea, Petitioner must show
there is a "reasonable probability that, but for counsel's errors,
he would not have pleaded guilty and would have insisted on going
to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

592 F.3d at 1163 (citation omitted).  "Surmounting <u>Strickland</u>'s

high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788

(quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is

accorded great deference.  "The standards created by <u>Strickland</u> and

§ 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104

S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct.

2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,

review is 'doubly' so, <u>Knowles</u>[4], 556 U.S., at ----, 129 S.Ct. at

1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's
> determination" under the <u>Strickland</u> standard
> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct.
> 1933.  And, because the <u>Strickland</u> standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see also</u>

<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In

addition to the deference to counsel's performance mandated by

<u>Strickland</u>, the AEDPA adds another layer of deference--this one to

---

[4] <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411 (2009).

a state court's decision--when we are considering whether to grant

federal habeas relief from a state court's decision.").

## VII. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review:

> Before bringing a § 2254 habeas action in
> federal court, a petitioner must exhaust all
> state court remedies that are available for
> challenging his state conviction. See 28
> U.S.C. § 2254(b), (c). To exhaust state
> remedies, the petitioner must "fairly
> present[]" every issue raised in his federal
> petition to the state's highest court, either
> on direct appeal or on collateral review.
> Castille v. Peoples, 489 U.S. 346, 351, 109
> S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989)
> (emphasis omitted). Thus, to properly exhaust
> a claim, "state prisoners must give the state
> courts one full opportunity to resolve any
> constitutional issues by invoking one complete
> round of the State's established appellate
> review process." O'Sullivan v. Boerckel, 526
> U.S. 838, 845, 119 S.Ct. 1728, 1732, 144
> L.Ed.2d 1 (1999).

Maples v. Allen, 586 F.3d 879, 886 (11th Cir. 2009) (per curiam),

petition granted in part, 131 S.Ct. 1718 (U.S. Mar. 21, 2011) (No.

09A974, 10-63).

Procedural defaults may be excused under certain

circumstances: "[n]otwithstanding that a claim has been

procedurally defaulted, a federal court may still consider the

claim if a state habeas petitioner can show either (1) cause for

and actual prejudice from the default; or (2) a fundamental

miscarriage of justice." Id. at 890 (citations omitted). In order

for Petitioner to establish cause,

the procedural default "must result from some
objective factor external to the defense that
prevented [him] from raising the claim and
which cannot be fairly attributable to his own
conduct." McCoy v. Newsome, 953 F.2d 1252,
1258 (11th Cir. 1992) (quoting Carrier, 477
U.S. at 488, 106 S.Ct. 2639). Under the
prejudice prong, [a petitioner] must show that
"the errors at trial actually and
substantially disadvantaged his defense so
that he was denied fundamental fairness." Id.
at 1261 (quoting Carrier, 477 U.S. at 494, 106
S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999), cert. denied,

528 U.S. 934 (1999).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

procedurally defaulted claim if he can establish that a fundamental

miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result. The Eleventh Circuit

has explained:

[I]f a petitioner cannot show cause and
prejudice, there remains yet another avenue
for him to receive consideration on the merits
of his procedurally defaulted claim. "[I]n an
extraordinary case, where a constitutional
violation has probably resulted in the
conviction of one who is actually innocent, a
federal habeas court may grant the writ even
in the absence of a showing of cause for the
procedural default." Carrier, 477 U.S. at
496, 106 S.Ct. at 2649.[5] "This exception is
exceedingly narrow in scope," however, and
requires proof of actual innocence, not just
legal innocence. Johnson v. Alabama, 256 F.3d
1156, 1171 (11th Cir. 2001).

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

11

Id.  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial."  Calderson v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected.  Schlup, 513 U.S. at 324.

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Brown argues that counsel was ineffective because he told Brown that he would withdraw from the case if Brown did not enter a guilty plea and that it would make the judge "mad" if Brown proceeded to trial.  Thus, Brown asserts that he entered the guilty plea because "he believed that he would be without counsel of his choice or that he would be without any counsel if he did not take the plea."  Petition at 6B.  Brown sufficiently exhausted the issue by raising this ground in his Rule 3.850 motion, as ground one.  Ultimately, relying on the reasoning in the

State's response,[6] the court denied the motion on the merits with respect to this claim. Resp. Ex. Q. Upon Brown's appeal, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion as to this claim on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. The record supports the trial court's conclusion. As previously explained, Brown entered a plea of guilty to two counts of sale or delivery of cocaine and one count of possession of cannabis. At the plea hearing, defense

---

[6] Resp. Ex. P, State's Response to Defendant's Post Conviction Motion, filed July 18, 2007, at 19.

counsel (Richard Selinger) announced that he had discussed the case "extensively" with Brown and that Brown had authorized him to enter a plea of guilty to the charges of two counts of sale or delivery of cocaine and one count of possession of cannabis. Plea Tr. at 111. Brown confirmed that he was entering the guilty plea with his full knowledge and consent and because it was what he thought was "best" for him to do. Id. at 112. When the trial judge advised Brown that the maximum sentence he could receive for each sale or delivery charge would be fifteen years of imprisonment and possibly thirty years of imprisonment for each charge if he was found to be a habitual felony offender, Brown affirmed that he understood. Id. at 113. Next, when the trial judge informed Brown that he did not have to plead guilty, but instead could plead not guilty and proceed to trial, Brown affirmed that he understood he had that option. Id. at 114.

The trial judge then proceeded to advise Brown of his rights to proceed to trial, to call and confront witnesses, and to have those witnesses testify even if they preferred not to testify. Id. at 114-15. Brown acknowledged that he understood his rights and that, by pleading guilty, he would give up his rights to call and confront witnesses and proceed to trial. Id. at 115-16. The trial judge asked Brown if anyone had promised him anything to persuade him to plead guilty, and Brown answered "[n]o, sir." Id. at 116.

When the trial judge asked if anyone had threatened or coerced him into pleading guilty, Brown again answered, "[n]o, sir." Id.

Next, the trial judge inquired as to counsel's representation, and the following lengthy colloquy ensued.

> THE COURT: Have you been able to discuss what defenses you'd use if you did go to trial or whether or not you have any?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. Well[,] I need to stop for a minute and let y'all [sic] discuss that then. Let m[e] pass this temporarily and then, Mr. Selinger, you talk about that with him and we'll bring you right back out.
>
> MR. SELINGER: Thank you.
>
> . . . .
>
> THE COURT: Mr. Selinger, you ready?
>
> MR. SELINGER: Yes, sir.
>
> THE COURT: Let's bring Mr. Brown back out, please. Jamel Brown.
>
> (Defendant present)
>
> THE COURT: Let the record reflect Mr. Jamel Brown is again present in court with counsel.
>
> Mr. Brown, have you been able to discuss what possible defenses you might have if you went to trial with Mr. Selinger?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has he answered all your questions?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with his representation?

THE DEFENDANT: Yes, sir.

THE COURT: Are there any motions that you want him to file before you enter this plea?

THE DEFENDANT: No, no, sir.

THE COURT: Are there any witnesses that you need him to investigate before you enter your plea?  What I am asking is [sic] there somebody that could help you in your defense that you haven't told him about yet or something like that?

THE DEFENDANT: No, sir.

THE COURT: Is there anything you have told him about that he hasn't looked into yet?

THE DEFENDANT: Yes, sir.

THE COURT: Who is that?

THE DEFENDANT: Person that was -- that was on this case.

THE COURT: Person that was -- somebody that was involved with this cocaine sale?

THE DEFENDANT: Yes, sir.

THE COURT: And you want him to investigate that person?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.  Have you told him about him before?

THE DEFENDANT: Yes, sir.

THE COURT: Do you know who he is talking about, Mr. Selinger?

MR. SELINGER: I believe it's the person that in deposition it came out that these detectives did an undercover -- this undercover sale while they were doing another one. We had asked the police officers in deposition who this person was and they declined to answer.

We then filed a motion to compel the disclosure of that name. We had a hearing. The Court granted our motion and the State did provide us with the name of that individual. And I have looked into it. And it really has not led anywhere. We have investigated that individual, if that's the individual Mr. Brown is referring to.

THE COURT: Is that who you're talking about, Mr. Brown?

THE DEFENDANT: No, it's not.

THE COURT: There's somebody other than that?

THE DEFENDANT: Yes, it is.

THE COURT: And you've already told Mr. Selinger?

THE DEFENDANT: Yes, sir.

THE COURT: Do you know what his name is?

THE DEFENDANT: Yes, sir.

THE COURT: What's the name?

THE DEFENDANT: Dejon Riles.

THE COURT: Dejon Riles?

THE DEFENDANT: R-I-L-E-S.

MR. SELINGER: Judge, I guess we could pass it, I'm not familiar with that name, pass it temporarily.

THE COURT: Pass it temporarily, talk to him about that, Mr. Brown, and we'll bring you back out.

THE DEFENDANT: All right.

. . . .

MS. HUDSON: We're going to give Jamel Brown another try.

THE COURT: Okay.  Let's bring out Mr. Brown again, please.

MS. HUDSON: Third time is the charm.

(Defendant present.)

THE COURT: Okay.  Let the record reflect Mr. Jamel Brown is once again present in court.

And Mr. Brown, have you had time to discuss this person that we were talking about with Mr. Selinger?

THE DEFENDANT: Yes, sir.

THE COURT: Is it still someone that you'd like to have investigated before you dispose of the case?

THE DEFENDANT: No, sir.

THE COURT: Mr. Selinger, have you been able to determine this is somebody who wouldn't have any effect on the case?

MR. SELINGER: Yes, sir.

THE COURT: Can you briefly tell me what it was?

MR. SELINGER: Judge, I think this person was in one of the counts[.]  [T]here were two people in the vehicle Mr. Brown was in.  And it's this other person that was in that vehicle.

THE COURT: Mr. Riles.

MR. SELINGER: Yes, so putting Mr. Riles on the stand to say he was the one that did all the sales and Mr. Brown had nothing to do with it, I think it is unlikely if we could find him.

And, secondly, there is still a second count that this individual was not present for.

THE COURT: I remember the testimony from our hearing there were two people.

MR. SELINGER: In the vehicle, yes, sir.

THE COURT: In the vehicle, yeah. Mr. Riles was the other guy in the vehicle?

THE DEFENDANT: (Nods.)

THE COURT: You think he'd come in and take this rap for you?

THE DEFENDANT: No, no, sir.

THE COURT: Do you know his first name?

THE DEFENDANT: Yes, sir.

THE COURT: What is it?

THE DEFENDANT: Dejon.

THE COURT: Dejon Riles. If you want me to continue the case and instruct Mr. Selinger to pursue Mr. Riles[,] I'll do it. If you don't want me to do [it,] I can go ahead and take your plea today. It's really up to you. I'll do whichever one you want done.

THE DEFENDANT: We'll go ahead and enter the plea today.

THE COURT: Okay. Without trying to track down Mr. Riles?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. That's what you want to do?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Let's see where I was. Has Mr. Selinger answered all your questions?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with his representation?

THE DEFENDANT: Yes, sir.

THE COURT: Have you determined it's in your own best interest to plead guilty?

THE DEFENDANT: Yes, sir.

Id. at 116-22.

Upon the judge's request, the State briefly recited the factual basis for the charges.

[I]f taken to trial[,] the State of Florida would be prepared to prove beyond a reasonable doubt the defendant Jamel Brown on August 3rd, 2004, in Duval County, Florida, did sell or deliver a controlled substance unlawfully, named or described in section 893.03(2)(a)[,] Florida Statutes, specifically cocaine. Contrary to the provisionses [sic] of section 893.131(a)(1)[,] Florida Statutes.

We would also be prepared to prove beyond a reasonable doubt that on August 11th, 2004, this defendant did the same thing which he unlawfully sold or delivered [a] controlled substance named in 893.03(2)(a)[,] Florida Statutes[,] specifically cocaine contrary to the provision of section 893.131(a)(1).

And for the third count that he did on August 12th, 2004, in Duval County, Florida,

unlawfully and knowingly was in actual or
constructive possession of a controlled
substance named or described in section
893.03(1)(c)[,] Florida Statutes, specifically
less than 20 grams of cannabis, contrary to
[the] provisions of section 893.13(6)(b)[,]
Florida Statutes.

Judge, this happened when detectives from
the Jacksonville Sheriff's Office were acting
undercover and they encountered the defendant
on August 3rd. They informed him they wanted
to buy some cocaine. He actually engaged in a
drug sale on that date and provided the police
officers with his name and his phone number.

The police officers called him and
arranged to meet again which they did so on
August 11th when he came to meet Detective
Bennett of the Jacksonville Sheriff's Office.
And he actually sold Detective Bennett $60
worth of cocaine on that day.

Shortly after that sale Detective Bennett
received a phone call on his cell phone from a
man with the same phone number that showed up
on caller ID that he knows Jamel Brown has and
his voice sounded like Jamel Brown informing
Detective Bennett that he should only buy his
dope from him, that he had the nicest,
brownest slabs in town.

Detective Bennett did in further
conversation make arrangements to meet with
the defendant on August 12th, 2004, the next
day, to buy $100 worth of cocaine.

While Detective Bennett was awaiting
[sic] on that meeting to occur, the defendant
called Detective Bennett on his cell phone and
informed him he had seen the undercover cops
and accused Detective Bennett of being [an]
undercover cop and said he wasn't going to do
it. At that point[,] take-down vehicles saw
the defendant across the street parked in a
Walgreens parking lot where they apprehended
him and found the marijuana in his vehicle.

Id. at 122-24. Defense counsel neither objected nor stated exceptions to the recited facts. Id. at 125. Accordingly, the court found "there is a factual basis" for the guilty plea. Id. Additionally, Brown affirmed that he understood everything relating to the plea that the trial judge had told him during the proceeding. Id. After Brown acknowledged that he still wished to enter the plea, the trial judge stated:

> Let the record reflect that I find Mr. Brown has entered his plea freely, intelligently and voluntarily with a full understanding of the nature of the offense, the maximum sentence, and the consequences of his plea.
>
> I therefore accept his plea of guilty.

Id. The trial court adjudicated Brown guilty of sale or delivery of cocaine (counts one and two) and possession of cannabis (count three) and sentenced him, as a habitual felony offender, to twenty-five years of imprisonment on count one, twenty-five years of imprisonment on count two (to run concurrently to count one) and one year of incarceration on count three. Sentencing Tr. at 274-75; Resp. Ex. G.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to

'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

At the plea hearing, Brown affirmed that he had determined it was in his best interests to plead guilty. Plea Tr. at 122. He stated: "This is what I think is best for me, sir." <u>Id</u>. at 112. The trial judge recessed the hearing twice for Brown to confer with counsel. Even when the trial judge offered to continue the case and instruct counsel to pursue a potential witness, Brown told the judge: "We'll go ahead and enter the plea today." <u>Id</u>. at 122. Moreover, Brown acknowledged that counsel had answered all his questions, that he was satisfied with counsel's representation and that no one had coerced him into pleading guilty. <u>Id</u>. at 116, 117. Additionally, the written plea form signed by Brown provides: "I have not been threatened, coerced, or intimidated by any person, including my attorney, in any way in order to get me to enter this plea." Resp. Ex. D at 74.

The United States Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong

presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Moreover, "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir.) (en banc), <u>cert</u>. <u>denied</u>, 502 U.S. 835 (1991). Thus, given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. At the plea hearing, Brown acknowledged that he pled guilty because it was his best interests to do so. Plea Tr. at 112, 122. If Brown had proceeded to trial and a jury had found him guilty of two counts of sale or delivery of cocaine and one count of possession of cannabis, he would have faced a maximum sentence of thirty years of imprisonment, as a habitual felony offender, on count one as well as on count two and a sentence of one year of incarceration in the county jail on count three. The trial judge informed Brown that the maximum sentence for all three counts was sixty-one years. <u>Id</u>. at 112.

> Ordinarily on each sale case the sentence
> would be 15 years, okay. That doubles. If
> you're found to be [a] habitual felony
> offender the maximum sentence doubles. So[,]
> each 15 year sentence would double to 30, so
> the two together would be 60 and then the year
> in the county jail, you understand that?

Id. at 113; see Resp. Ex. H at 1 ("The Court advised Defendant that

the maximum possible sentence in this case was 61 years.").

Therefore, Brown's ineffectiveness claim is without merit since he

has shown neither deficient performance nor resulting prejudice.

## B. Ground Two

As ground two, Brown claims that the trial judge erroneously

believed and stated that he _must_ impose a habitual felony offender

sentence under Florida Statutes section 775.084(1)(a)3[7] when he

actually had the discretion to impose a non-habitual offender

sentence even if Brown qualified as a habitual offender. See

Petition at 7A (citing Sentencing Tr. at 273-74). Thus, Brown

contends that the court's imposition of the habitual felony

offender sentence deprived him of his rights to due process and

equal protection of the law. Id. Brown raised this issue in his

motion to correct illegal sentence, see Resp. Ex. H, which the

trial court denied, see Resp. Ex. I. Additionally, Brown argued

this issue on direct appeal, see Resp. Ex. J, the State filed an

---

[7] Section 775.084(1)(a)3 provides, in pertinent part, that a
defendant may be sentenced as a habitual felony offender provided
that "[t]he felony for which the defendant is to be sentenced, and
one of the two prior felony convictions, is not a violation of s.
893.13 relating to the purchase or the possession of a controlled
substance."

Answer Brief, see Resp. Ex. K, and Brown filed a Reply Brief, see Resp. Ex. L. Ultimately, the appellate court affirmed Brown's conviction and sentence per curiam without a written opinion concerning this issue. See Brown, 926 So.2d 1272.

Respondents contend that the claim is procedurally barred since it was raised in a procedurally incorrect manner in state court. Response at 32. Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Additionally, even assuming the claim is not procedurally barred, to the extent that Petitioner may be attempting to raise, in ground two, the same claim he presented on direct appeal, such a claim presents an issue purely of state law that is not cognizable on federal habeas review. The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[8] Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991).

The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be

---

[8] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

available.  See <u>Jones v. Goodwin</u>, 982 F.2d 464, 471 (11th Cir. 1993); <u>Krasnow v. Navarro</u>, 909 F.2d 451, 452 (11th Cir. 1990). Moreover, the Supreme Court has often held that federal habeas relief does not lie for errors of state law.  As such, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law.  See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Even assuming that Petitioner raised the claim on direct appeal as a federal constitutional claim, the State, in response, addressed the merits of the claim.  <u>See</u> Resp. Ex. K.  Thus, the appellate court may have affirmed Petitioner's conviction and sentence based on the State's argument on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[9]  After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable

---

[9] <u>See</u> <u>Wright</u>, 278 F.3d at 1255.

application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is, nevertheless, without merit. In 2005, at the time of Brown's sentencing, Florida law provided that habitual offender sentencing was discretionary, not mandatory. See State v. Matthews, 891 So.2d 479, 489 (Fla. 2004) (citations omitted) ("Sentencing under the habitual offender statute is permissive, not mandatory."). At the sentencing hearing, the State introduced two certified judgments as evidence of Brown's prior convictions. See Sentencing Tr. at 129-30. The State also called Detective Bennett, as evidence of aggravation, see id. at 131-52, whose testimony was followed by Brown's witnesses (Raymond David, Eleanor Jannetta Husband, Tamara Belton, Yolanda Moses, Taketa Brown, Benjamin Brown, Patrick Green, and Lamar Stapelton) in support of mitigation, see id. at 152-227. Counsel then called Brown, who addressed the court and asked for leniency. See id. at 228-55. Next, the court heard counsels' arguments, see id. at 258-70, and imposed the sentence, see id. at 270-76.

Given the record, the trial judge's statements do not indicate that he believed that the law required him to sentence Brown as a

habitual offender, but instead, his statements reflect his belief
that because Brown was a drug dealer and repeat offender, he was
not inclined to give Brown "another chance."[10]  <u>Id</u>. at 273.  In
fact, the trial court's statements indicate that he was aware of
his discretion to impose a non-habitual offender sentence.  In
referring to Brown's support group and the witnesses who testified
for him at sentencing, the trial judge stated: "But I have no faith
whatsoever in their belief that if you got out of jail in one year
or two years or five years you would cause no problems for anybody
ever again."  <u>Id</u>. at 272-73.  The trial judge did not state that he
could not impose a one to five-year sentence, but instead, that he
did not believe such a sentence, although possible, would be
effective or beneficial in Brown's case.  Thus, Brown's claim that
the trial court's imposition of the habitual felony offender
sentence deprived him of his rights to due process and equal
protection of the law is without merit.

## C. Ground Three

As ground three, Brown claims that counsel was ineffective
because he failed to object to the sentencing judge's alleged
biased comments and failed to move to disqualify the judge.  As
acknowledged by the parties, Petitioner raised this ground in his
Rule 3.850 motion, as ground five.  The State responded as follows:

---

[10] <u>See</u> Sentencing Tr. at 271 ("I'm going to be very frank with
you, I think you're a drug dealer.").

Finally, in Ground Five, the Defendant alleges ineffective assistance of counsel in his failure to move to disqualify the Court for making biased comments during sentencing. The Defendant points to the Court's speech to the Defendant where it is acknowledged that there is a reason the Defendant is in Repeat Offender Court. The Court states that the Defendant has a history of flaunting the law.

There is nothing within these statements which constitutes "bias" against the Defendant. The Court is simply stating the facts. If the Court were forbidden to acknowledge that the Defendants before him in Repeat Offender Court were there for a reason, he or she would be extremely limited in comments. The Defendant, at the point of the Court's pronouncements, had pled guilty to the crimes he was charged with. He had also stipulated to his prior record. It is not "biased" to point out that the Defendant is a repeat offender, it is a fact. This claim has no merit and should be denied.

Resp. Ex. P at 22-23. Ultimately, relying on the reasoning in the State's response addressing this issue, the court denied the motion on the merits with respect to this claim. Resp. Ex. Q. Following an appeal by Brown, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of Brown's post conviction motion as to this claim on the merits, there are qualifying state court decisions. Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Brown's ineffectiveness claim is without merit. Counsel's performance was within the wide range of professionally competent assistance. Counsel cannot be faulted for failing to object and move to disqualify the judge when the judge's comments were not biased or inappropriate. See Sentencing Tr. at 270-76. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected and moved to disqualify the judge. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. See Response at 35-39; Sentencing Tr. at 270-76.

## D. Ground Four

As ground four, Brown claims that counsel was ineffective because counsel's failure to prepare for trial induced Brown to enter a guilty plea. He asserts that he was not informed of the availability of a motion to suppress nor of any available defenses

and that, when he proclaimed his innocence, counsel told him that there were no defenses to the charges. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion, as ground four. In responding, the State argued that the transcripts of the plea and sentencing proceedings refute Brown's ineffectiveness claim. <u>See</u> Resp. Ex. P at 21-22 (quoting Plea Tr. at 116-17; Sentencing Tr. at 241-42). Ultimately, relying on the State's reasoning, the court denied the motion on the merits with respect to this claim. Resp. Ex. Q. The appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of Petitioner's post conviction motion as to this claim on the merits, there are qualifying state court decisions. Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Following a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Petitioner has failed to establish that counsel's performance was deficient. Given the record, counsel's performance was within the wide range of professionally competent assistance. See Response at 41-43; Plea Tr.; Sentencing Tr. at 241-42. Indeed, the written plea form and the plea colloquy reflect that Brown knowingly, intelligently, and voluntarily entered his guilty plea to the charges. See Plea Tr.; Resp. Ex. D at 74 (providing that Brown was not threatened, coerced, or intimidated by any person, including his attorney, in any way in order to persuade him to enter the guilty plea). Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## IX. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail. Knowles, 129 S.Ct at 1420. In the alternative, Petitioner's claims are without merit. Accordingly, for the above-stated

reasons, the Amended Petition will be denied, and this case will be dismissed with prejudice.

## X. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. #13) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of November, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 11/25
c:
Jamel Brown
Ass't Attorney General (Conley)